UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY and ERIC LIPTON,<br><br>       Plaintiffs,<br><br>   – *versus* –<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>       Defendant. | No. 19 Civ. 645 (JSR) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Counsel for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

Of Counsel:

PETER ARONOFF
Assistant United States Attorney

## CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1
BACKGROUND ............................................................................................................................ 2
    I.    History and Background of the Instant Action ....................................................... 2
    II.   Summary of Released Records ............................................................................... 2
ARGUMENT .................................................................................................................................. 4
    I.    Standard of Review ................................................................................................. 4
    II.   The Government Has Properly Asserted Exemptions 5 and 6 ................................ 5
        A.    State Has Properly Asserted Exemption 5 to Withhold Information Exempt Under the Attorney-Client and Deliberative Process Privileges................................... 5
        B.    State Has Properly Asserted Exemption 5 to Withhold Information Protected by Exemption 6 to Protect Individual Privacy ........................................................... 12
    III.  The Government Properly Segregated Releasable Portions of the Redacted Records 13
CONCLUSION ............................................................................................................................. 14

# AUTHORITIES

Page(s)

**Cases**

*Bell v. Dep't of Def.*, No. CV 16-0959 (RC),
  2018 WL 4637005 (D.D.C. Sept. 27, 2018) .............................................................................. 13

*Brinton v. Dep't of State*,
  636 F.2d 600 (D.C. Cir. 1980) .................................................................................................. 10

*Carney v. DOJ*,
  19 F.3d 807 (2d Cir. 1994) .......................................................................................................... 4

*CIA v. Sims*,
  471 U.S. 159 (1985) .................................................................................................................... 4

*Common Cause v. Nuclear Regulatory Comm'n*,
  674 F.2d 921 (D.C. Cir. 1982) .................................................................................................. 13

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ........................................................................................................................ 4

*DOD v. FLRA*,
  510 U.S. 487 (1994) .................................................................................................................. 13

*Ferguson v. FBI*,
  No. 89 Civ. 5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995) ........................................ 5

*Grand Cent. P'ship v Cuomo*,
  166 F.3d 473 (2d Cir. 1999) ................................................................................................... 5, 9

*Halpern v. FBI*,
  181 F.3d 279 (2d Cir. 1999) ........................................................................................................ 4

*Hopkins v. HUD*,
  929 F.2d 81 (2d Cir. 1991) ............................................................................................... 5, 9, 10

*In re Country of Erie*,
  473 F.3d 413 (2d Cir. 2007) ........................................................................................................ 6

*In re Grand Jury Investigation*,
  399 F.3d ...................................................................................................................................... 6

*In re Six Grand Jury Witnesses*,
  979 F.2d 939 (2d Cir. 1992) ........................................................................................................ 7

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) .................................................................................................................... 4

*Judicial Watch, Inc. v. Exp.-Imp. Bank*,
  108 F. Supp. 2d 19 (D.D.C. 2000) .............................................................................................. 7

*Martin v. DOJ*,
  488 F.3d 446 (D.C. Cir. 2007) .................................................................................................... 4

*Multi Ag Media LLC v. Dep't of Agric.*,
  515 F.3d 1224 (D.C. Cir. 2008) .......................................................................................... 12, 13

*Nat'l Broad. Co. v. U.S. Small Bus. Admin.*,
  836 F. Supp. 121 (S.D.N.Y. 1993) ............................................................................................. 6

*New York Times Co. v. DOJ*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012) .................................................................. 4, 5
*New York Times Co. v. DOJ*,
  915 F. Supp. 2d 508 (S.D.N.Y. 2013) ..................................................................... 4
*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ............................................................................................ 9, 10
*Privacy Info. Ctr. v. Dep't of Homeland Sec.*,
  384 F. Supp. 2d 100 (D.D.C. 2005) ........................................................................ 6
*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975) .................................................................................................. 9
*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ................................................................................. 6
*Tigue v. DOJ*,
  312 F.3d 70 (2d Cir. 2002) .................................................................................. 5, 9
*U.S. Dep't of State v. Washington Post Co.*,
  456 U.S. 595 (1982) ................................................................................................ 12
*Wilner v. NSA*,
  592 F.3d 60 (2d Cir. 2009) ...................................................................................... 5

**Statutes**

5 U.S.C. § 552 ................................................................................................................ 1, 4
5 U.S.C. § 552(b) ............................................................................................................. 13
5 U.S.C. § 552(b)(5) .......................................................................................................... 5
5 U.S.C. § 552(b)(6) ........................................................................................................ 12
Pub. L. 76-252 .................................................................................................................... 7
Pub. L. 95-521 .................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................... 4

**Regulations**

5 C.F.R. Part 2635 ............................................................................................................. 7

Defendant the United States Department of State ("State Department" or "State") respectfully submits this memorandum of law in support of its motion for summary judgment in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

**PRELIMINARY STATEMENT**

This FOIA request, directed to the State Department, seeks records reflecting ethics complaints in relation to a proposed trip by Secretary of Transportation Elaine L. Chao to China in October of 2017 to participate in meetings with Chinese government officials. The trip never occurred. In response to the request, the State Department has located eight email chains. The State Department and Department of Transportation ("DOT") have asserted exemption 5 over portions of these records for two main reasons. First, portions of the records are protected by the attorney-client privilege because they are communications between State employees and State lawyers seeking or providing legal advice on potential ethics issues raised by potential non-DOT participants in aspects of the proposed trip. These portions are also protected by the deliberative process privilege because they reflect steps in State's deliberations about these ethics issues and about planning of the potential trip. Second, other portions of these records are protected by the deliberative process privilege because they reveal DOT's predecisional deliberations about aspects of the trip, including potential events, topics for discussion, and participants. The government also withheld information about one individual's health and age under exemption 6 to protect individual privacy. As explained further below and in three declarations accompanying this memorandum, these exemptions are proper, and the government accordingly requests summary judgment.

**BACKGROUND**

**I.     History and Background of the Instant Action**

On November 15, 2017, plaintiff Eric Lipton, a reporter for plaintiff The New York Times Company, made a FOIA request for documents "related to Transportation Secretary Elaine Chao's planned visit to China for the 9th U.S.-China Transportation Forum (TF) scheduled to take place in Beijing, China, October 30-31, 2017." Declaration of Eric F. Stein ("Stein Decl.") ¶ 5 & Ex. 2; Amended Complaint ("Am. Compl.") ¶ 8, ECF No. 6. Two days after the request was made, State acknowledged receipt by letter. Stein Decl. ¶ 6 & Ex. 3. For the purposes of this litigation, plaintiffs have narrowed their request "solely to ethics complaints made regarding Secretary Chao's trip." Am. Compl. ¶ 8. However, State has "construed this modified request broadly to encompass ethics-related inquiries." Stein Decl. ¶ 5 n.1.

By letters dated April 2 and May 1, State informed plaintiffs that it had located a total of eight responsive records, which were produced subject to certain redactions for FOIA exemptions. See Stein Decl. ¶¶ 7-8, Exs. 4 & 5. By another later dated May 21, State re-released some records with additional information unredacted. See Stein Decl. ¶ 9, Ex. 6. The most current versions of all released records, which consist of eight chains of emails in two separate groups, are attached as exhibits to the Stein Declaration. Stein Decl., Ex. 7.

**II.    Summary of Released Records**

In connection with this motion, State has produced a Vaughn index that describes each of the eight released records, including the specific description of what information was withheld and the basis for doing so. See Stein Decl. ¶ 4 & Ex. 1 ("Vaughn index"). In addition, the United States Department of Transportation, which is not a party to this case but has equities in some of the released records, has also provided two declarations that explain the basis for withholding certain information under exemptions 5 and 6. See Declaration of Joel Szabat (explaining DOT's

2

exemption 5 deliberative process assertions); Declaration of Michael Bell (explaining general background and DOT's exemption 6 assertions).

In overview, all eight of the records derive from two separate families of emails. All eight records exclusively include senders and recipients who are employees or officials of State, DOT, or both. All eight records are dated between October 19 and October 24, 2017. *See generally* Stein Decl., Ex. 7.

The first family of emails (bearing Bates numbers C06704929, C06704930, C06704931, C06704932, and C06705460) have the subject line "Secretary Chao – Ethics Question;" all recipients and senders of the emails are State employees. Vaughn at 1-2. Each of the records in this family is a chain of emails that starts with the same email from a State official at the U.S. Embassy in Beijing to members of State's Office of the Legal Adviser. Broadly speaking, these emails consist of exchanges among State employees, some of whom are attorneys, for the purpose of seeking and providing legal advice with respect to State employees' ethics obligations because of possible inclusion of non-DOT individuals on the DOT delegation. Stein Decl. ¶ 7; Vaughn index at 1-2.

The second family of emails (bearing Bates numbers C06704926, C06704934, and C06704946) have the subject line "Secretary Chao's Visit to China," and are among both State and DOT employees. Vaughn index at 2-4. Each of the records in this family is a chain of emails that starts with the same email from a State official at the U.S. Embassy in Beijing to both DOT and State employees or officials. These emails include correspondence between State and DOT related to Secretary Chao's proposed trip, as well as discussion within State about the same legal question discussed in the first family of emails. Vaughn index at 2-4.

# ARGUMENT

## I. Standard of Review

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)); *New York Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012). Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 166-67 (1985), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see also Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) ("Recognizing, however, that the public's right to information was not absolute and that disclosure of certain information may harm legitimate governmental or private interests, Congress created several exemptions to FOIA disclosure requirements."); *John Doe Agency*, 493 U.S. at 152 (FOIA exemptions are "intended to have meaningful reach and application").

Most FOIA actions are resolved by summary judgment. *See, e.g.*, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994); *New York Times Co. v. DOJ*, 915 F. Supp. 2d 508, 531 (S.D.N.Y. 2013). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, the government meets its burden of demonstrating that it properly withheld documents if it produces declarations "giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812. An agency's declarations in support of its withholdings are "accorded a presumption of good faith." *Id.*; *see also Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999). "[A]n agency's justification for invoking

4

a FOIA exemption is sufficient if it appears logical or plausible." *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (citation and internal quotation marks omitted). For the reasons set forth below, the Government's declarations logically and plausibly establish that the withheld portions of the responsive documents are exempt from disclosure under FOIA Exemptions 5 and 6.[1]

**II.     The Government Has Properly Asserted Exemptions 5 and 6**

**A. State Has Properly Asserted Exemption 5 to Withhold Information Exempt Under the Attorney-Client and Deliberative Process Privileges**

As further explained in the declarations submitted in support of this summary judgment motion and the accompanying Vaughn index, State has properly asserted exemption 5 to withhold information that is protected by the attorney-client and deliberative process privileges.

FOIA's fifth exemption protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). "By this language, Congress intended to incorporate into the FOIA all the normal civil discovery privileges." *Hopkins v. HUD*, 929 F.2d 81, 84 (2d Cir. 1991). "Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*, attorney-client, work-product, [the deliberative process] privilege) are protected from disclosure under Exemption 5." *Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002) (quoting *Grand Cent. P'ship v Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999)).

---

[1] The government has not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *New York Times*, 872 F. Supp. 2d at 314 (noting Local Civil Rule 56.1 statement not required in FOIA actions in this Circuit).

Furthermore, based on discussion with plaintiffs' counsel, the government understands that plaintiffs will not contest the adequacy of State's search for records. Thus, this brief does not address that issue; instead, it addresses solely the government's assertion of exemptions.

5

1. **State Has Properly Withheld Information Protected by the Attorney-Client Privilege**

State has properly asserted exemption 5 over those portions—but only those portions—of the responsive emails that are protected by attorney-client privilege. "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). The purpose of the privilege "is to encourage attorneys and their clients to communicate fully and frankly and thereby to promote broader public interests in the observance of law and administration of justice." *In re Country of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (citation and internal quotation marks omitted). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts*, 117 F.3d at 618. Indeed, "the traditional rationale for the [attorney-client] privilege applies with special force in the government context. It is crucial that government officials, who are expected to uphold and execute the law . . . be encouraged to seek out and receive fully informed legal advice." *County of Erie*, 473 F.3d at 419 (quoting *In re Grand Jury Investigation*, 399 F.3d at 534).

The attorney-client privilege protects factual matter provided or solicited for the purpose of obtaining legal advice, legal reasoning and advice itself, and discussion among lawyers about developing legal opinions. *See, e.g.*, *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005) ("Although [attorney-client privilege] principally applies to facts divulged by a client to his attorney, this privilege also encompasses any opinions given by an attorney to his client based on, and thus reflecting, those facts as well as communications between attorneys that reflect client-supplied information."); *Nat'l Broad. Co. v. U.S. Small Bus. Admin.*, 836 F. Supp. 121, 125 (S.D.N.Y. 1993) (under exemption 5, "the attorney-client privilege includes not only information provided by a client to a lawyer, but also 'professional

6

advice given by an attorney that discloses such information'" (quoting *In re Six Grand Jury Witnesses,* 979 F.2d 939, 944 (2d Cir. 1992)).

State's exemption 5 redactions cover portions of email exchanges between various State employees and members of State's Office of the Legal Adviser's Office of Ethics and Financial Disclosures ("L/EFD"). L/EFD is the State office that advises other parts of the agency and individual employees on compliance with legal obligations laid out in statutes such as the Ethics in Government Act of 1978, Pub. L. 95-521, and the Hatch Act, Pub. L. 76-252, regulations such as 5 C.F.R. Part 2635 (covering standards of ethical conduct for employees of the executive branch), and Executive Orders such as E.O. 13770 (imposing certain ethical obligations on executive branch appointees). *See* Vaughn index at 1. Because the ethics obligations of State employees and officials are embodied in these and other laws, advice about ethics compliance is necessarily legal advice. Courts have recognized that advice about government ethics obligations, including advice on whether various potential actions would be consistent with ethics obligations, are protected by attorney-client privilege. *See, e.g.*, *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 36 (D.D.C. 2000) (protecting under exemption 5 "handwritten notes containing legal advice from the Office of the General Counsel regarding whether it would be appropriate under the government ethics rules for the Director to accept an invitation to dinner").

For example, the first family of emails, consisting of documents C06705460, C06704931, C06704932, C06704929 and C06704930, each starts with an email dated October 19, 2017 (the "Felsing Email") from a State official at the U.S. Embassy in Beijing to attorneys in two offices of State's legal office ("L"), including attorneys at L/EFD. The information withheld from the Felsing Email consists of facts about Secretary Chao's proposed trip to China, the embassy

7

employee's assessment of those facts, and a request for legal advice in the form of ethics advice. This information is protected by the attorney-client privilege because it is a confidential communication to attorneys for the purpose of seeking legal advice.

The other emails in this family similarly contain confidential legal advice and analysis. For example, State has withheld from C06704932 two preliminary legal assessments from attorneys within L/EFD. C06704931 contains a separate preliminary legal opinion and recommendation for how to proceed. The email chains found at C06704929 and C06704930 consist of preliminary advice and further exchanges among State attorneys on the same ethics questions raised in the Felsing Email. This includes solicitation of further facts from State employees and preliminary legal advice (C06704929), as well as discussion of the issues raised internally among L/EFD attorneys (C06704930). All of these communications are protected by the attorney-client privilege because they consist of confidential discussion among State lawyers for the purpose of providing legal advice.

Portions of the second family of emails, which consist of three chains of emails between State and DOT employees or officials, as well as within State, are similarly protected by the attorney-client privilege. The information withheld includes communications between a State employee in Beijing and an attorney in L/EFD for the purpose of seeking legal advice; an email from an L/EFD attorney to his supervisor to propose a course of action; several communications between U.S. Embassy Beijing and L/EFD attorneys that provide facts (including detailed discussions of DOT's legal views regarding the ethical issue; and emails from attorneys putting forward preliminary legal views. These communications are protected by the attorney-client privilege because they are confidential exchanges between State employees and attorneys to both

8

provide and solicit facts pertaining to requested legal advice, and discuss such confidential legal advice.

### 2. State Has Properly Withheld Information Protected by the Deliberative Process Privilege

Exemption 5 also incorporates the "'deliberative process' or 'executive' privilege, which protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Hopkins*, 929 F.2d at 84; *accord NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975) ("those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision making process" (quotation marks omitted)).

An agency record must satisfy two criteria to qualify for the deliberative process privilege: it "must be both 'predecisional' and 'deliberative.'" *Grand Cent. P'ship*, 166 F.3d at 482 (citations omitted). A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). The government need not "identify a specific decision" made by the agency to establish the predecisional nature of a particular record, *Sears*, 421 U.S. at 151 n.18; *accord Tigue*, 312 F.3d at 80. So long as the document "was prepared to assist [agency] decisionmaking on a specific issue," it is predecisional. *Id*.

"A document is 'deliberative' when it is actually related to the process by which policies are formulated." *Grand Cent. P'ship*, 166 F.3d at 482 (quotation marks and alteration omitted). In determining whether a document is deliberative, courts inquire whether it "formed an important, if not essential, link in [the agency's] consultative process," whether it reflects the opinions of the author rather than the policy of the agency, and whether it might "reflect inaccurately upon or prematurely disclose the views of [the agency]." *Id*. at 483; *accord*

9

*Hopkins*, 929 F.2d at 84. The privilege "focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Hopkins*, 929 F.2d at 84-85 (quoting *Sears*, 421 U.S. at 150).

State has withheld several different categories of deliberative information from the responsive documents. First, as discussed above, these documents contain preliminary legal advice, tentative legal opinions, internal debate, suggestions, the solicitation of additional facts and information to assist in the decision-making process, and analyses of potential courses of action, all rendered in the process of developing such legal advice regarding an ethical issue. Thus, in addition to being protected by the attorney-client privilege, this information is also clearly encompassed by the deliberative process privilege. *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) (holding that legal advice, like other advisory opinions, "fits exactly within the deliberative process rationale for Exemption 5"). The release of such internal debate regarding government employees' ethical obligations "would chill communications between State personnel, including attorneys," "and would therefore seriously inhibit State's ability to ensure compliance with legal obligations." Vaughn index at 2.

The disclosure of information regarding the ethical considerations that govern the composition of various events with high-level foreign government officials would also reveal, including to foreign governments, "the important internal steps that DOT and the State Department may consider in planning intergovernmental meetings," including "ethics and other legal reviews, as well as programmatic and foreign policy considerations, that the [Transportation] Secretary and her advisors will take into account as important factors in making arrangements for intergovernmental interactions." Szabat Decl. ¶ 10. Release of this information

10

would provide insight into the mental processes of high-ranking DOT officials, and could chill candid discussion within the government. Szabat Decl. ¶¶ 11-12. State has therefore withheld all information concerning this internal deliberation, including the identities of the non-DOT personnel whose potential inclusion at certain events was the subject of the legal advice in question.

Second, the State Department has withheld intra- and inter-agency discussion of Secretary Chao's proposed trip from documents C06704926, C06704934, and C06704946. The information withheld includes predecisional discussions about "the possible composition of the DOT delegation, possible meetings and events that the delegation might attend, which delegation members might attend these meetings and events, possible specific agenda topics for meetings with high-level Chinese officials, and the planned trip itinerary within China." Szabat Decl. ¶ 7.

These redacted portions are predecisional: they were written approximately a week before the planned trip (which never took place) was scheduled to occur, and DOT has confirmed (as the email text itself shows) that DOT was still in the process of planning events and selecting participants, so no final decisions had been made. Szabat Decl. ¶ 7.

They are also deliberative. The withheld information reflects DOT's internal planning process for a meeting abroad between a DOT delegation (to include senior DOT officials) and senior officials of a foreign government, and thus effectively provides a road map of DOT's thinking on policy matters. Szabat Decl. ¶ 8. For example, the redacted sentences reflect which particular DOT components that senior DOT officials were considering having represented in the intergovernmental discussion; releasing which specific components were under discussion would indicate that DOT was considering discussing certain transportation policy topics, but not others, with the Chinese delegation. Szabat Decl. ¶ 9. Likewise, by showing which particular individuals

11

were then contemplated for participation, the withheld portions show the Secretary's "approach and priorities in planning intergovernmental meetings between the U.S. and China." Szabat Decl. ¶ 9. Release of this information would give persons outside of the U.S. government, including foreign officials, insight into DOT's planning and policy priorities and the thinking of senior U.S. officials. Szabat Decl. ¶ 11. In turn, this insight "could help foreign government representatives or others influence or manipulate the planning process to their advantage and to the disadvantage of the United States, thus prejudicing the advancement of U.S. interests through the planned talks." Szabat Decl. ¶ 11. Releasing the withheld information would chill the exchange of views by U.S. government officials planning similar sorts of events, a risk that is particularly acute here given that the planned event was one of a series of similar events. Szabat Decl. ¶ 12. Indeed, DOT officials are currently engaged in the same planning process for the next U.S.-China Transportation Forum. Szabat Decl. ¶ 12.

### B. State Has Properly Asserted Exemption 5 to Withhold Information Protected by Exemption 6 to Protect Individual Privacy

State has also properly applied exemption 6 to redact information about a third party that appears in the second family of emails.

Exemption 6 exempts from disclosure information from personnel, medical, or other similar files where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).

To be protected, the individual's privacy interest in the information's nondisclosure need only be more than de minimis. *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). If a protected privacy interest is found, the court must then consider whether

the "public interest in disclosure outweighs the individual privacy concerns." *Id*. at 1230 (internal quotation marks omitted). But the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] *significantly* to public understanding *of the operations or activities of the government*." *DOD v. FLRA*, 510 U.S. 487, 495 (1994) (first emphasis added).

As explained in the Bell Declaration, DOT applied exemption 6 to information about the health and age of a single third party individual. Bell Decl. ¶ 7. Individuals have a privacy interest that is more than de minimis in both their age and their health information. *See, e.g.*, *Bell v. Dep't of Def.*, No. CV 16-0959 (RC), 2018 WL 4637005, at *16 (D.D.C. Sept. 27, 2018) (approving withholding of age under exemption 6); *Common Cause v. Nuclear Regulatory Comm'n*, 674 F.2d 921, 938 (D.C. Cir. 1982) ("Exemption 6 applies to information of a personal nature, including discussions of a person's health . . . ."). Moreover, there is no relevant public interest in the disclosure of the age or health status of the individual. Bell Decl. ¶ 7. Thus, the government properly withheld this information.

## III. The Government Properly Segregated Releasable Portions of the Redacted Records

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The Stein Declaration, as supplemented by the Vaughn index, makes clear that the government conducted a line-by-line analysis of every record. Stein Decl. ¶ 15; Vaughn index at 2, 4. No records were withheld in full, and significant portions of each of the eight email chains have been released without redactions. Thus, the government has satisfied its obligations pursuant to section 552(b).

## CONCLUSION

The government's motion for summary judgment should be granted.

Dated: May 21, 2019
       New York, New York

                                Respectfully submitted,

                                GEOFFREY S. BERMAN
                                United States Attorney
                                Southern District of New York

By:    */s/ Peter Aronoff*
           PETER ARONOFF
           Assistant United States Attorney
           86 Chambers Street, Third Floor
           New York, New York 10007
           Telephone: (212) 637-2697
           Facsimile: (212) 637-2717
           E-mail: peter.aronoff@usdoj.gov