UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————— X
                                                          :
THE NEW YORK TIMES COMPANY                                :
and ERIC LIPTON,                                          :
                                                          :
                    Plaintiffs,                           :
                                                          :          19-cv-645-JSR
          - against -                                     :
                                                          :
UNITED STATES DEPARTMENT OF STATE,                        :
                                                          :
                    Defendant.                            :
——————————————————————————— X


**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFFS'
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**


David E. McCraw, Esq.
Dana R. Green, Esq.
Al-Amyn Sumar, Esq.
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-4634
mccraw@nytimes.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 2

    Secretary Chao's Government Responsibilities Present Potential Conflicts of Interest ........... 2

    The Times's FOIA Request and This Lawsuit .......................................................... 4

ARGUMENT ............................................................................................................. 7

    I. THE CORRESPONDENCE BETWEEN STATE AND DOT OFFICIALS MUST BE FULLY DISCLOSED ............................................................................................. 8

        A. The Deliberative Process Privilege ..................................................................... 9

        B. The Withheld Material Is Not Exempt From Disclosure ................................... 12

    II. AN *IN CAMERA* REVIEW OF THE REMAINING REDACTIONS IS WARRANTED . 16

CONCLUSION ........................................................................................................ 18

CERTIFICATE OF SERVICE ................................................................................ 19

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Civil Liberties Union v. Dep't of Def.*, 543 F.3d 59 (2d Cir. 2008) ........................................ 8

*Assadi v. U.S. Citizenship & Immigration Servs.,* 2015 WL 1500254 (S.D.N.Y. Mar. 31, 2015) . 8

*Assoc. Press v. U.S. Dep't of Defense*, 554 F.3d 274 (2d Cir. 2009) .............................................. 7

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143 (2d Cir. 2010) ... 7, 8

*Bryant v. Maffucci*, 923 F.2d 979 (2d Cir. 1991) ............................................................................ 8

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) ......................................................... 7

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) ............................... 8

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) .......................................................................... 7

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ..................... 9, 10

*Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, 2017 WL 5972702 (N.D. Cal. Nov.

 30, 2017) .................................................................................................................... 12

*Envt'l. Prot. Agency v. Mink*, 410 U.S. 73 (1973) .................................................................. 11, 17

*Fox News Network, LLC v. U.S. Dep't of the Treasury*, 678 F. Supp. 2d 162 (S.D.N.Y. 2009).. ....

 .................................................................................................................................. 10, 15

*Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) ................................. 10, 11, 15

*Halpern v. F.B.I.*, 181 F.3d 279 (2d Cir. 1999) ......................................................................... 16

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81 (2d Cir. 1991) ......................... 10, 13

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, --- F. Supp. 3d ---, 2019 WL 1317557 (D.D.C.

 Mar. 22, 2019) ..................................................................................................... 12, 17, 18

*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252 (D.D.C. 2004) ........................... 17

*Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005) ................................... 8

*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency*, 811 F. Supp. 2d 713 (S.D.N.Y. 2011) ................................................................ 17

*Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284 (S.D.N.Y. 2012) ........................................................... 10, 11, 15

*Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ............................. 9, 10

*N.Y. Times Co. v. Dep't of Justice*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012) ................................. 7, 8

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168 (1975) ............................. 10

*Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62 (D.D.C. 2018) ..................................... 11, 12

*The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345 (E.D.N.Y. 2009) ......... 16, 17

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002) .................................................... 10, 14

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) ............................................................................ 7

*Wilner v. Nat'l Sec. Agency*, 592 F.3d 60 (2d Cir. 2009) ............................................................. 8

*Wood v. F.B.I.*, 432 F.3d 78 (2d Cir. 2005) .................................................................................. 8

## Statutes

5 U.S.C. § 552 ........................................................................................................................ *passim*

## Rules & Regulations

Fed. R. Civ. P. 56(a) ..................................................................................................................... 7

Plaintiffs The New York Times Company and Eric Lipton (together, "The Times") respectfully submit this memorandum of law in opposition to the motion for summary judgment by Defendant United States Department of State ("State Department" or "State") and in support of their cross-motion for summary judgment on their Amended Complaint brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

These proceedings concern public access to agency records regarding an official Government trip to China, a trip that – though ultimately cancelled – has raised questions about potentially unethical conduct by officials in the highest levels of the U.S. Government. In October 2017, Elaine Chao, the United States Secretary of the Department of Transportation ("DOT" or "Transportation"), was preparing to embark on an official trip to China to meet with high-level Chinese counterparts. The trip, however, was abruptly cancelled days before it was scheduled to occur, after concerns were raised that persons outside Government – individuals connected to Ms. Chao with business interests in China – were being invited to attend the trip's meetings.

In response to a FOIA request from The Times about the trip, State ultimately produced eight heavily redacted email chains. Among other things, State has invoked the deliberative process privilege to withhold the destination of Secretary Chao's trip, the names of attendees at "high-level meetings," information regarding the nature of the State Department's ethical concerns, and other information exchanged between the State Department and DOT. Those redactions violate FOIA. The redacted material is neither predecisional nor deliberative. And its withholding deprives the public of the ability to know whether senior officials were misusing their public positions to benefit private interests. As to the other redactions made pursuant to the

attorney client and deliberative process privileges, The Times respectfully requests that the Court review the documents *in camera* to ensure that redactions are no greater than permitted under FOIA.

## STATEMENT OF FACTS

**Secretary Chao's Government Responsibilities Present Potential Conflicts of Interest**

Secretary Chao has had a long and distinguished career in Government. She has served as Chairwoman of the Federal Maritime Commission, Director of the Peace Corps, President of the United Way, Secretary of Labor, and currently serves as DOT Secretary. *Biography*, Secretary Elaine L. Chao, http://elainelchao.com/biography/. Secretary Chao has achieved recognition for her work not only in the United States, but also in China, where she holds particular prominence as the first American woman of Asian descent to serve in the Cabinet. *Id.* Born in Taiwan to Chinese parents, Secretary Chao immigrated to the United States at the age of 8. *Id.*; Michael Forsythe *et al.*, *A 'Bridge' to China, and Her Family's Business, in the Trump Cabinet*, The New York Times (June 2, 2019), https://nyti.ms/2HQVr8j (hereinafter, "Forsythe *et al.*, *A 'Bridge' to China*").

During her time in Government, questions have been raised regarding potential conflicts of interest between Secretary Chao's official roles and her family's business activities. Ms. Chao's father is the founder of The Foremost Group, a privately held shipping company. Foremost Group, *About*, http://www.foremostgroupusa.com/about/. Her sister, Angela, is now the Chairman and CEO of the company. *Id.* Based in New York, the company has extensive business operations in China and Asia. *See* Michael Forsythe and Eric Lipton, *For the Chao Family, Deep Ties to the World's 2 Largest Economies*, The New York Times (June 2, 2019), https://nyti.ms/2MrEztm. Although Secretary Chao has no role or ownership stake in the

company, she and her husband, Senator Mitch McConnell, have received millions in gifts from her father, and the Chao family has made substantial political donations to organizations and campaigns affiliated with Mr. McConnell, according to financial disclosure forms. *See* Forsythe *et al.*, *A 'Bridge' to China*; *see also* Glenn Kessler, *How did Mitch McConnell's net worth soar?*, The Washington Post (May 22, 2014), https://wapo.st/2Ksvxtw.

As Secretary of Transportation, Ms. Chao is responsible for overseeing and implementing policies affecting the shipping industry. *See, e.g.*, DOT, *Our Administrations*, https://www.transportation.gov/administrations. Among other things, the DOT includes the Maritime Administration ("MARAD"), the federal agency responsible for overseeing waterborne transportation and maintaining the health of the U.S. merchant marine. *See* MARAD, *About Us*, https://www.maritime.dot.gov/about-us. MARAD "works in many areas involving ships and shipping, shipbuilding, port operations, vessel operations, national security, environment, and safety." *Id.* Concerns have been raised that Secretary Chao has advanced policies that benefit The Foremost Company and that she improperly used her Government position to enhance the reputation of the company in China.[1]

In 2017, Secretary Chao was planning an official trip to China to meet with officials at "the highest levels of leadership." Dkt. 12, Declaration of Eric Stein ("Stein Decl.") Ex. 7 at 2-3.

---

[1] *See, e.g.*, Forsythe *et al.*, *A 'Bridge' to China*; Luis Sanchez, *Chao's appearances with her father raise ethical concerns: report*, The Hill (May 7, 2018), https://bit.ly/2Xt0aCG; Tanya Snyder, *Did Elaine Chao's DOT interviews help her family's business?*, Politico (May 6, 2018), https://politi.co/2FS6Ws9; Margaret Hartmann, *Transportation Secretary Elaine Chao Finally Gets Her Own Ethics Scandal*, New York Magazine (May 6, 2018), https://nym.ag/2WgHlB4; Aruna Viswanatha, *Author Alleges China Used Business Deals to Influence Families of Mitch McConnell, Joe Biden*, The Wall Street Journal (Mar. 15, 2018), https://on.wsj.com/2u4Txfw; Lee Fang and Spencer Woodman, *Global Shipping Business Tied to Mitch McConnell, Secretary Elaine Chao Shrouded in Offshore Tax Haven*, The Intercept (Feb. 5, 2018), https://bit.ly/2FInhQn; *Family's Shipping Company Could Pose Problems for Trump's Transportation Pick*, ProPublica (Dec. 12, 2016), https://bit.ly/2gwyWtr.

The trip was scheduled for late October and early November 2017. *See id.* at 2. However, the trip was cancelled shortly before Secretary Chao's planned departure. DOT did not provide a reason for the trip's cancellation at the time. *See* Forsythe *et al.*, *A 'Bridge' to China*.

**The Times's FOIA Request and This Lawsuit**

On November 15, 2017, The Times submitted the FOIA request at issue to the State Department. Dkt. 6, Amended Complaint ("Am. Compl.") ¶ 8. The request sought "any documents related to Transportation Secretary Elaine Chao's planned visit to China for the 9th U.S.-China Transportation Forum (TF) scheduled to take place in Beijing, China, October 30-31, 2017," for the time period between January 20 and November 15, 2017. Stein Decl. Ex. 2 at 1. Though The Times repeatedly inquired about the status of its request over the next year, the State Department failed to produce any responsive records or otherwise issue a determination in regard to the request. *See* Am. Compl. ¶¶ 9-12. The Times initiated this lawsuit in January of 2019. *See* Dkt. 1.[2] For purposes of this litigation, The Times limited the scope of its request "solely to ethics complaints made regarding Secretary Chao's trip." Am. Compl. ¶ 8.

In the course of the litigation, State made two main document productions to The Times, releasing eight distinct email chains comprising two so-called "families" of emails. Stein Decl. ¶¶ 7-8 & Exs. 4-5; Dkt. 11, Defendant's Memorandum of Law ("Def. Br.") at 3. The first family consists of five separate chains of emails exchanged among State Department officials on October 19, 2017. *See* Stein Decl. Ex. 7 at 4-16, 29-30 (C06704929, C06704930, C06704931, C06704932, C06705460). The email initiating each of the chains, sent by an official stationed at the U.S. Embassy in Beijing, Evan Felsing, sought "guidance" from State Department colleagues

---

[2] The Times filed its initial Complaint on January 23, 2019. *See* Dkt 1. It filed an amended pleading on February 11, 2019, *see* Dkt. 6, because the initial Complaint misquoted the language of the FOIA request.

on an "[e]thics [q]uestion" about Secretary Chao's forthcoming trip to China. *See id.* at 6. According to State's *Vaughn* Index, Mr. Felsing's email contains, among other things, "facts regarding the proposed inclusion of certain non-DOT individuals in Department of Transportation ("DOT") Secretary Elaine Chao's proposed trip to China." Stein Decl. Ex. 1 ("*Vaughn* Index") at 1. State redacted much of Mr. Felsing's message, and much of the subsequent correspondence between State Department officials in four of the five email chains, pursuant to Exemption 5's attorney-client and deliberative process privileges. *See id.* at 1-2.

The second "family" consists of three chains of emails exchanged between October 20 and 24, 2017. *See* Stein Decl. Ex. 7 at 1-3, 17-27 (C06704926, C06704934, C06704946).[3] Each of the chains begins as an exchange between non-attorney State and DOT officials regarding the details of Secretary Chao's China trip. On October 20, Mr. Felsing wrote to his DOT counterparts:

> . . . Mission China looks forward to Secretary Chao's upcoming visit to [REDACTED (1)] from October 29-November 5 and to assisting in any way possible. We are confident that her visit will be a great success.
>
> In order to proceed with our efforts to set up Secretary Chao's official meetings, we need to know the identities of all participants and the subject matter of the meetings. It would be helpful if we could get confirmation from you in writing.
>
> We will also need to conduct our own due diligence for these meetings here at the Embassy. Part of that process involves contacting our State Department ethics officials, and it's likely that they will reach out to DOT's ethics office. If you've already been in touch with your ethics officials, please provide us with a name. Otherwise, our ethics officials will reach out to your ethics officials in the course of normal due diligence. . . .

*See id.* at 2-3. Derek Kan, an official in DOT's Office of the Secretary, provided that confirmation the following day, listing the meeting participants and topics:

---

[3] State initially produced these emails to The Times on May 1, 2019, but – after The Times raised concerns about the legal basis for the redactions – re-released them on May 21 with fewer redactions. *See* Stein Decl. ¶¶ 8-9.

. . . Thanks for the note and thanks to Mission China for all of their hard work. As [Ambassador Terry] Branstad discussed with the Secretary a few weeks back, this is a unique opportunity to help U.S. Embassy access some of the highest levels of leadership in China and we are happy to help you to make this happen.

Regarding the participants for high-level meetings we will have SEC Chao, [Ambassador Branstad], [REDACTED (2)] me, and Admiral Mark Buzby (MARAD Administrator). These meetings will also be staffed by Julie Abraham from X.[4] [REDACTED (3)]

In terms of the topics, [REDACTED (4)]

Further, it would be great to get a sense if Mission China has any issues they wish for us to put on the agenda. We are happy to have the Secretary raise any matters the [Ambassador]/US Embassy wish. [REDACTED (5)]

Regarding due diligence and ethics officials, we've been conferring with our ethics officer and have a couple of loose ends to wrap up. . . .

*Id.* at 2. Copying their colleagues, Mr. Felsing and Mr. Kan then traded emails regarding their

agency's respective ethics reviews for Secretary Chao's trip:

[Felsing]: . . . Great, please let us know as soon as the ethics office review is complete [REDACTED (6)]. We can then proceed with planning for this schedule. Our ethics office may follow up with their DOT colleagues if they have questions. Thanks again.

[Kan]: We've been working with Ethics throughout this planning process. [REDACTED (7)]. As you may know, [REDACTED (8)].

*See id.* at 1. In each email chain, the whole exchange is forwarded by Mr. Felsing to other

officials in the State Department, who then discuss Secretary Chao's trip amongst themselves.

*See id.* at 1, 17-18, 22-25. Much of this correspondence is also redacted, but it shows that

Secretary Chao's trip to China is ultimately cancelled, ostensibly because "of unexpected new

demands on [the Secretary's] schedule." *Id.* at 23.

    As with the first family of emails, State has invoked the deliberative process and

attorney-client privileges to shield the redacted material in these email chains from disclosure.

---

[4] This appears to be a reference to Julie Abraham, Director of the Office of International Transportation and Trade at DOT. *See* DOT, *Key Officials*, https://www.transportation.gov/policy/key-officials.

*See Vaughn* Index at 3-4. For its part, Transportation relies on the deliberative process privilege

as justification for the redactions in the correspondence involving its employees. *See* Dkt. 13,

Declaration of Joel Szabat ("Szabat Decl.") ¶¶ 6-12.[5]

## ARGUMENT

FOIA requires that Government records be made available to the public unless a statutory

exemption applies. 5 U.S.C. § 552(a)(3)(A), (b)(1)-(9). "The basic purpose of FOIA reflected a

general philosophy of full agency disclosure," and Government agency records may only be

withheld if they fall within one of the nine statutory exemptions. *Bloomberg, L.P. v. Bd. of*

*Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010) (quoting *Dep't of Air*

*Force v. Rose*, 425 U.S. 352, 360-61 (1976) (internal marks and alterations omitted)). In light of

this purpose, "FOIA exemptions are to be construed narrowly." *Assoc. Press v. U.S. Dep't of*

*Def.*, 554 F.3d 274, 283 (2d Cir. 2009). There is a "strong presumption in favor of disclosure

[that] places the burden on the agency to justify the withholding of any requested documents."

*Id.* (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal marks omitted)).

FOIA litigation is typically resolved on summary judgment. *See, e.g.*, *Carney v. U.S.*

*Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). In a FOIA case, as in other litigation, summary

judgment is properly granted when there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Bryant v. Maffucci*,

923 F.2d 979, 982 (2d Cir. 1991).[6] Under FOIA, the agency bears the burden of demonstrating

---

[5] DOT also made a redaction pursuant to FOIA Exemption 6 for "the health and age of a single third party individual" whose name appears in the DOT-State correspondence. Def. Br. at 13. Though the individual's name must be disclosed, The Times does not object to redaction of his or her age and health information.

[6] Neither The Times nor the State Department has submitted a Local Rule 56.1 statement in accord with the practice in FOIA cases in this District. *See N.Y. Times Co. v. Dep't of Justice*,

that a particular exemption applies, and doubts are resolved in favor of disclosure. *See Am. Civil Liberties Union v. Dep't of Def.*, 543 F.3d 59, 66 (2d Cir. 2008). Failure to meet that burden requires disclosure of the requested documents. *See Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005).

A Court reviews *de novo* an agency's decision to withhold information from the public. 5 U.S.C. § 552(a)(4)(B). As a result, the agency's decision as to the applicability of a given exemption is entitled to no judicial deference. *See Bloomberg*, 601 F.3d at 147. Although courts review reasonably detailed agency affidavits with a presumption of good faith, this primarily is for determining the need for further fact-finding. *See, e.g.*, *Wood v. F.B.I.*, 432 F.3d 78, 85 (2d Cir. 2005); *see also Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009). "Conclusory assertions of privilege will not suffice to carry the government's burden of proof in defending FOIA cases." *Assadi v. U.S. Citizenship & Immigration Servs.,* 2015 WL 1500254, at *5 (S.D.N.Y. Mar. 31, 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980) (internal marks omitted)).

## I.

### THE CORRESPONDENCE BETWEEN STATE AND DOT OFFICIALS MUST BE FULLY DISCLOSED

The redactions to correspondence among non-attorney State and Transportation officials regarding Secretary Chao's trip, which are located in the second "family" of email chains produced to The Times, are not legally sustainable. Though the Government contends that the redacted material falls within the deliberative process privilege, it is clear that none of the material satisfies either of the privilege's two requirements. The material at issue is not

---

872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) ("[T]he general rule in this Circuit is that in FOIA actions . . . Local Civil Rule 56.1 statements are not required." (internal marks omitted)).

predecisional because it was sought and provided for purposes of logistics and information-sharing, not to aid an agency decisionmaker in arriving at a decision. Nor is the withheld material deliberative, because the agency officials were patently not offering judgments and opinions evaluating the merits of Government policy. In addition, the Government has failed to satisfy its additional burden under the most recent amendments to FOIA: showing that disclosure would cause foreseeable harm to the interests protected by the deliberative privilege. Each of these reasons independently requires disclosure of the full correspondence.

### A.  The Deliberative Process Privilege

Exemption 5 permits an agency to decline to disclose "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The deliberative process privilege is among the privileges that apply through Exemption 5. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975). The privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *Sears*, 421 U.S. at 150 (internal marks omitted)). Its purpose is to improve agency decisionmaking by fostering full and frank communication among agency employees about Government policy. The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8-9 (quoting *Sears*, 421 U.S. at 151 (citation omitted)).

The privilege does not, however, sweep up every Government document that relates in some way to an agency decision. Instead, to benefit from the protections of the privilege, the agency must establish that the document at issue is <u>both</u> predecisional and deliberative. *See Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). A document is considered <u>predecisional</u> if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) (internal marks omitted)). The agency "must be able to demonstrate that . . . the document for which [the] privilege is claimed related to a specific decision facing the agency." *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002) (citing *Sears*, 421 U.S. at 151 n.18); *see, e.g., Fox News Network, LLC v. U.S. Dep't of the Treasury*, 678 F. Supp. 2d 162, 167-68 (S.D.N.Y. 2009) (requiring agency "to identify the particular decisions to which the documents correspond," or "if a decision was not made based upon the document, . . . the specific issue facing the agency that the document addressed and note that a decision was not made").

The document at issue must also be <u>deliberative</u>, *i.e.*, "actually related to the process by which policies are formulated." *Grand Central P'ship*, 166 F.3d at 482 (quoting *Hopkins*, 929 F.2d at 84 (internal marks and alteration omitted)). This analysis looks to factors such as whether a given document "formed an essential link in a specific consultative process, whether it reflects the personal opinion of the writer rather than the policy of the agency, and whether, if released, it would inaccurately reflect or prematurely disclose the views of the agency." *Fox News Network*, 678 F. Supp. 2d at 168 (citing *Grand Central P'ship*, 166 F.3d at 482); *see Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 292 (S.D.N.Y. 2012) (Rakoff, J.) ("[T]he determination of whether a document is 'deliberative' turns

on the document's content, for example, whether it contains considerations of a policy's merits, rather than mere facts or articulations of existing policy, which might also pertain to an agency's decision.").

And, of significance here, "purely factual material" contained in an otherwise deliberative document finds no shelter under the privilege unless it is inextricably intertwined with deliberative material. *Envt'l. Prot. Agency v. Mink*, 410 U.S. 73, 88 (1973); *Grand Central P'ship*, 166 F.3d at 482.

An amendment to FOIA, enacted in 2016, places an additional burden on the Government in this case: it must show that disclosure of the withheld material would reasonably harm the interests sought to be protected by the deliberative process privilege. Congress imposed this requirement on federal agencies through the FOIA Improvement Act of 2016. *See* Dep't of Justice, *Congress Passes Amendments to the FOIA*, https://www.justice.gov/oip/oip-summary-foia-improvement-act-2016. Among other things, the Act codified a Justice Department policy known as the "foreseeable harm" standard, which the Department applied in determining whether to defend agency decisions to withhold information sought by FOIA requesters. *See Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 72 (D.D.C. 2018). As amended by the Act, the relevant text of FOIA now provides: "An agency shall . . . withhold information under this section only if [ ] (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption described in [5 U.S.C. § 552(b)]; or (II) disclosure is prohibited by law[.]" *Id.* at 73 (quoting 5 U.S.C. § 552(a)(8)(A) (internal marks omitted)).[7]

---

[7] As the *Rosenberg* court explained, the foreseeable harm standard "applies only to those FOIA exemptions under which discretionary disclosures can be made," such as FOIA Exemption 5. 342 F. Supp. 3d at 73 n.1 (quoting S. Rep. No. 114-4 at 8 (internal marks omitted)). It has no

For the purposes of this case, the effect of the change to the law is this: even if a record or portion thereof otherwise falls within the deliberative process privilege, the agency cannot withhold it absent specific, meaningful explanation of how disclosure "would harm the agency's deliberative process." *Id.* at 78-79 (DOD's perfunctory assertion that releasing the withheld material "would jeopardize the free exchange of information between senior leaders within and outside of the [DOD]" was insufficient to satisfy foreseeable harm standard); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, --- F. Supp. 3d ---, 2019 WL 1317557, at *5 (D.D.C. Mar. 22, 2019) (rejecting agency's "general," "boiler plate," and "speculati[ve]" claims of foreseeable harm to deliberative process: "The question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld."); *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, 2017 WL 5972702, at *6 (N.D. Cal. Nov. 30, 2017) (agency "fail[ed] to explain how disclosure would expose [its] decision-making process so as to discourage candid discussion" or to "provide any justification for how the agency would be harmed by disclosure as required by the FOIA Improvement Act of 2016"), *appeal dismissed*, 2018 WL 3155689 (9th Cir. Jan. 12, 2018).

**B. The Withheld Material Is Not Exempt From Disclosure**

It follows from those legal principles that the material in the eight redactions found in email correspondence between non-attorney DOT and State officials must be disclosed. The eight redactions concern the place of Secretary Chao's trip (redaction 1), the participants in the meetings with Chinese leadership (redactions 2 and 3), the topics to be discussed at those

_____

application to FOIA exemptions that make it mandatory for the Government to withhold information.

meetings (redaction 4 and likely redaction 5[8]), and statements about DOT's ethics review in connection with the trip (redactions 6, 7, and 8). *See* Stein Decl. Ex. 7 at 1-2. None of these redactions can be sustained under the deliberative process privilege because the redacted material is neither predecisional nor deliberative. And even if it were both, the Government has made no meaningful showing that disclosure of the material would foreseeably chill candid policy deliberations at State or DOT.

*First,* the withheld material is manifestly not "predecisional." State's argument to the contrary is premised on the assertions that the emails "were written approximately a week before the planned trip" and that "DOT was still in the process of planning events and selecting participants." Def. Br. at 11. Those facts are beside the point. The dispositive question is whether the redacted material was "prepared in order to assist an agency decisionmaker in arriving at his decision." *Hopkins*, 929 F.2d at 84 (citation and internal marks omitted). It was not. As the context of the correspondence makes abundantly clear, the redacted material was exchanged purely as part of an information-sharing exercise between officials at two Government agencies shortly before the Secretary's trip. With a week to go before her arrival, Mr. Felsing, the State Department official in Beijing, inquired with his DOT colleagues about the participants and subject matter of Secretary Chao's planned official meetings "[i]n order to proceed with [State's] efforts to set up" the meetings. Stein Decl. Ex. 7 at 2. Those meetings already were scheduled;

---

[8] The material in redaction 5 appears in Mr. Kan's first email, immediately following – but in the same paragraph as – the sentence: "Further, it would be great to get a sense if Mission China has any issues they wish for us to put on the agenda. We are happy to have the Secretary raise any matters the AMB/US Embassy wish." Stein Decl. Ex. 7 at 2. The Times presumes, accordingly, that the information in redaction 5 relates in some way to agenda items for Secretary Chao's official meetings.

Mr. Felsing inquired about the meetings for logistical reasons, not for the purposing of informing a "specific decision" facing the State Department. *See Tigue*, 312 F.3d at 80.

The unredacted portions of Mr. Kan's response to Mr. Felsing confirm that. He notes the participants DOT "will" have at the official meetings, lists the topics that will be discussed, and invites input from Embassy officials. Stein Decl. Ex. 7 at 2. Mr. Kan does none of this to "assist an agency decisionmaker in arriving at his decision," but simply to convey information to his counterparts at another agency. Indeed, State makes no effort to explain why the names of some meeting participants (Secretary Chao, the Ambassador, Mr. Kan, and Admiral Buzby) are not predecisional, while the names of the other meeting participants are. The precise nature of the redactions regarding DOT's ethics review is harder to discern, but here too the purpose of the exchange appears to be pure information-sharing among officials at different agencies.

The State Department repeatedly invokes the words "possible" or "planned" to describe Secretary Chao's China trip, Def. Br. at 11, as if that brings all communications about the trip within the umbrella of the deliberative process privilege. But nothing in the emails, sent and received days before her scheduled arrival, suggested that the correspondents were deliberating on whether the trip should go forward or be cancelled. Indeed, as the records produced in this case show, Transportation officials subsequently informed the State Department that Secretary Chao's trip was cancelled "because of unexpected new demands on her schedule," Stein Decl. Ex. 7 at 23, not because of any ethics concerns. To put it simply, a communication is not predecisional merely by virtue of the fact that it precedes or bears in some way on an agency decision – it must also be directed to assisting the making of such a decision. None of the withheld information meets that test.

*Second*, there is no reasonable contention that the withheld material is "deliberative." Here the Government raises the specter that disclosure will reveal "DOT's internal planning process," "provide[] a road map of DOT's thinking on policy matters," or even allow foreign Government officials to "influence or manipulate the planning process to their advantage and to the disadvantage of the United States." Def. Br. at 11-12 (quoting Szabat Decl. ¶¶ 8, 11 (internal marks omitted)). This hyperbole aside, the Government again skirts the essential question: whether the redacted information "actually relate[s] to the process by which policies are formulated." *Grand Central P'ship*, 166 F.3d at 482 (internal marks and alteration omitted). And, again, the context of the correspondence belies the Government's position. It shows agency officials engaged in the exchange of "mere facts" – about the place of Secretary Chao's visit, the attendees and topics of meetings, and the status of DOT's ethics review regarding the trip – rather than in an evaluation of the "policy[] merits" of those or other matters. *See Nat'l Immigration Project of Nat'l Lawyers Guild*, 868 F. Supp. 2d at 292. The Government cannot credibly say, for instance, that the redacted material "reflects the personal opinion of the writer rather than the policy of the agency" or "would inaccurately reflect or prematurely disclose the views of the agency." *Fox News Network*, 678 F. Supp. 2d at 168. None of the material here is deliberative in any real sense of the word.

*Third*, even if the withheld material did fall within the privilege, the Government could not credibly show that its disclosure would reasonably undermine the candor of policy deliberations at either State or Transportation. The Government's assertions that disclosure would provide "insight into DOT's policy and planning priorities" and allow foreign Governments "to manipulate the planning process," Def. Br. at 12 (quoting Szabat Decl. ¶ 11 (internal marks omitted)) – whatever that means – are baseless. Disclosing the redacted

information would do no more than inform the public who planned to attend high-level meetings between Chinese and American government officials and what was to be discussed. Not only are these facts of considerable public interest, they also would have become known to the Chinese Government and the American public had Secretary Chao's trip gone forward as planned. Disclosing these facts now may be embarrassing or uncomfortable for officials in State and Transportation, but the notion that doing so would chill real policy deliberations among agency officials is entirely unfounded.

## II.

### AN *IN CAMERA* REVIEW OF THE
### REMAINING REDACTIONS IS WARRANTED

The extent of redaction in the rest of the records – that is, all of the correspondence in the first family of email chains, and the correspondence in the second family of email chains between State Department officials – makes it difficult to determine whether the Government's withholdings are proper. *See* 5 U.S.C. § 552(b). For this reason, The Times requests that the Court exercise its discretion to conduct *in camera* review of those redactions. *See* 5 U.S.C. § 552(a)(4)(B) (the court "may examine the contents of . . . agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section"); *Halpern v. F.B.I.*, 181 F.3d 279, 292 (2d Cir. 1999) (*in camera* review proper "where it might be possible that the agency had exempted whole documents simply because there was some exempt material in them"); *see, e.g.*, *The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 356 n.6 (E.D.N.Y. 2009) (conducting *in camera* review of documents partially withheld under Exemption 5 given that small number of

documents made "the burden of *in camera* review relatively light" and that "the dispute turn[ed] on the contents of the withheld documents, not on the parties' interpretations of [them]").

The Times asks that the Court's *in camera* review assess whether the Government has properly applied the attorney client and deliberative process privileges and adhered to its obligation to segregate and disclose all nonexempt material. The attorney-client privilege shields only confidential communications with or among attorneys for the purpose of obtaining or conveying legal advice. *See, e.g.*, *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency*, 811 F. Supp. 2d 713, 736 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011); *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004) ("The privilege does not allow an agency to withhold a document merely because it is a communication between the agency and its lawyers."). Even if some of the redacted material falls within the privilege, there may be other material (*e.g.*, communications among attorneys unrelated to legal advice, advice from attorneys to officials that is not of a legal character) that does not. It is also plausible that that some of the redacted material is outside the scope of the deliberative process privilege. For instance, at least some of the communications were made after Secretary Chao's trip had been cancelled, making them "post-decisional." *See* Stein Decl. Ex. 7 at 22. Moreover, as noted above, the privilege does not apply to purely factual material in the correspondence. *See Mink*, 410 U.S. at 88.

And, again, the agency cannot rest on generic, boilerplate assertions of foreseeable harm from disclosure. *Compare, e.g.*, Def. Br. at 10-11 (release of material "would chill communications between State personnel, including attorneys" and "would provide insight into the mental processes of high-ranking DOT officials"), *with Judicial Watch, Inc.*, 2019 WL 1317557, at *5 (deeming insufficient agency's representations that disclosure "could have a

chilling effect on the discussion within the agency" and "have the foreseeable harm of

discouraging a frank and open dialogue among interagency staff" (internal marks omitted)).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully asks this Court: (i) to deny State's

motion for summary judgment and to grant Plaintiffs' cross-motion for summary judgment; (ii)

to direct State to make public within 20 days all material redacted in the documents provided to

The Times in response to its FOIA request; (iii) to award Plaintiffs the costs of this proceeding,

including reasonable attorney's fees, as expressly permitted by FOIA, *id.* § 552(a)(4)(E); and (iv)

to grant such other and further relief as the Court deems just and proper.


Dated:  New York, NY
        June 4, 2019

                                        Respectfully submitted,

                                        By:  /s/ David E. McCraw

                                        David E. McCraw, Esq.
                                        Dana R. Green, Esq.
                                        Al-Amyn Sumar, Esq.
                                        The New York Times Company
                                        Legal Department
                                        620 Eighth Avenue, 18th Floor
                                        New York, NY 10018
                                        Phone: (212) 556-4031
                                        Fax: (212) 556-4634
                                        mccraw@nytimes.com

                                        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of June, 2019, a true and correct copy of the

foregoing **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION**

**FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION**

**FOR SUMMARY JUDGMENT** was filed with the Court through the electronic filing system,

which will automatically serve electronic notice of the same on all counsel of record.

<em><u>/s/ David E. McCraw</u></em>