USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/9/19

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
THE NEW YORK TIMES COMPANY and       :
ERIC LIPTON,                         :
                                     :     19-cv-645 (JSR)
         Plaintiffs,                 :
                                     :     MEMORANDUM ORDER
         -v-                         :
                                     :
UNITED STATES DEPARTMENT OF STATE,   :
                                     :
         Defendant.                  :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

On November 15, 2017, New York Times reporter Eric Lipton submitted a FOIA request to the State Department for documents related to a trip that Transportation Secretary Elaine Chao had planned to take to China. A year and a half later, State produced two "families" of email chains that were responsive to Lipton's request. This production was heavily redacted, however, with State asserting that the redacted communications were protected by the attorney-client privilege and the deliberative process privilege.

Both sides now move for summary judgment on the issue of whether the redacted information was properly withheld. After hearing oral argument on the parties' motions, the Court conducted an <u>in camera</u> review of the contested redactions. Having completed its review, the Court concludes that the redactions were proper, subject to two minor exceptions

discussed below. Accordingly, each motion is granted in part and denied in part.

## Background

In October of 2017, Secretary Chao was planning a trip to China to meet with high-level government officials. The trip ultimately did not occur, Szabat Decl. ¶ 6, ECF No. 13, and on November 15, 2017, plaintiff Lipton submitted a FOIA request to State requesting documents "related to Transportation Secretary Elaine Chao's planned visit to China for the 9th U.S.-China Transportation Forum (TF) scheduled to take place in Beijing, China, October 30-31, 2017," Stein Decl. ¶ 5, ECF No. 12.

Lipton followed up with State throughout 2018 to check in on the progress of the request, but he was repeatedly told that the request "continued to be processed." Amended Complaint ¶¶ 9-11 ("Compl."), ECF No. 6. On January 23, 2019, Lipton and the Times filed the instant action, ECF No. 1, and on February 11, they filed their Amended Complaint. Plaintiffs have limited the scope of their request to "ethics complaints made regarding Secretary Chao's trip." Compl. ¶ 8.

On April 2 and May 1, State released eight heavily redacted email chains that are part of two different "families" of emails. Stein Decl. ¶¶ 7-8. On May 21, State re-released some of the emails with additional information unredacted. Id. ¶ 9;

2

Ex. 7 (Released Emails). State withheld the redacted information under FOIA Exemption 5, claiming that it was protected by the attorney-client privilege and the deliberative process privilege. Id. ¶¶ 13-14; Ex. 1 (Vaughn Index).[1]

The first family of emails contains five separate email chains (C06704929, C06704930, C06704931, C06704932, C06705460), each with the subject line "Secretary Chao – Ethics Question," that were exchanged among State officials on October 19, 2017. See Released Emails 4-7, 8-10, 11-13, 14-16, 29-30. The email initiating each of the chains was sent by Evan Felsing, a State official stationed at the U.S. Embassy in Beijing. Felsing's email – which was sent to members of State's Office of the Legal Advisor – concerned an "ethics question" about the inclusion of certain non-Transportation individuals on Secretary Chao's upcoming official visit to China. Vaughn Index 1. Felsing's email is almost entirely redacted, as are some of the responsive emails in the five chains in the first family. State argues that the redacted material is protected by the attorney-client privilege and the deliberative process privilege. Id. at 2.

---

[1] State also claimed that it properly withheld one individual's health information under FOIA Exemption 6, and the Times does not dispute this.

The second family of emails contains three separate email chains (C06704926, C06704934, C06704946), each with the subject line "Secretary Chao's Visit to China." See Released Emails 1-3, 17-21, 22-28. These emails were exchanged among State and Transportation officials between October 20 and 24, 2017. Each chain begins with a correspondence between Felsing and Derek Kan, one of Chao's senior advisors. Szabat Decl. ¶ 8. Felsing sends an initial email that says:

> Mission China looks forward to Secretary Chao's upcoming visit to [redacted] from October 29-November 5 and to assisting in any way possible. . . .
>
> In order to proceed with our efforts to set up Secretary Chao's official meetings, we need to know the identities of all participants and the subject matter of the meetings. It would be very helpful if we could get confirmation from you in writing.
>
> We will also need to conduct our own due diligence for these meetings here at the Embassy. Part of that process involves contacting our State Department ethics officials, and it's likely that they will reach out to DOT's ethics office. If you've already been in touch with your ethics officials, please provide us with a name. Otherwise, our ethics officials will reach out to your ethics officials in the course of normal due diligence.

Released Emails 2-3. Kan then responds:

> Regarding the participants for high-level meetings, we will have SEC Chao, AMB, [redacted,] me, and Admiral Mark Buzby (MARAD Administrator). These meetings will also be staffed by Julie Abraham from X. [Redacted.] In terms of topics, [redacted.]

> Further, it would be great to get a sense if Mission
> China has any issues they wish for us to put on the
> agenda. We are happy to have the Secretary raise any
> matters the AMB/US Embassy wish. [Redacted.]
>
> Regarding due diligence and ethics officials, we've been
> conferring with our ethics officer and have a couple of
> loose ends to wrap up.

Id. at 2. Felsing replies to Kan's email: "Great, please let us know as soon as the ethics office review is complete. [Redacted.] We can then proceed with planning for this schedule. Our ethics office may follow up with their DOT colleagues if they have any questions." Id. at 1. And Kan responds to Felsing: "We've been working with Ethics throughout this planning process. [Redacted.] As you may know, [redacted.]" Id.

State argues that the redacted material in the Kan-Felsing exchange is protected by the deliberative process privilege. Vaughn Index 3-4. The exchange between Kan and Felsing is also forwarded to, and discussed with and among, various State attorneys. See Released Emails 1, 17-18, 22-25; Vaughn Index 3-4. These subsequent discussions contain redactions, some of which are significant. State contends that these redactions are justified by the deliberative process privilege and the attorney-client privilege. Vaughn Index 3-4.

Both State and the Times now move for summary judgment on the issue of whether the redacted material in the released

emails was properly withheld. ECF Nos. 10, 17. On July 1, 2019, the Court held oral argument on the parties' motions. The Court subsequently reviewed the contested redactions in camera.

## Analysis

### I. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. DOJ, 19 F.3d 807, 812 (2d Cir. 1994).[2]

#### A. Whether the Redacted Material in the Kan-Felsing Exchange Is Protected by the Deliberative Process Privilege

Under 5 U.S.C. § 552(b)(5), "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" are exempt from disclosure. To qualify for non-disclosure under

---

[2] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

Exemption 5, a document's "source must be a government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). In addition, as with all exemptions, withholding under Exemption 5 is permissible only if an "agency reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

One of the privileges that the Government may assert under Exemption 5 is the deliberative process privilege, which protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Klamath, 532 U.S. at 8. The purpose of the privilege is to improve agency decision-making in light of "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Id. at 8-9. To qualify for protection under the deliberative process privilege, a document must satisfy two requirements: "First, the document must be 'predecisional,' that is, prepared in order to assist an agency decisionmaker in arriving at his decision. Second, the document must be

'deliberative,' that is, actually related to the process by which policies are formulated." Hopkins v. HUD, 929 F.2d 81, 84 (2d Cir. 1991).

State argues that the redacted material in the Kan-Felsing exchange is both predecisional and deliberative. Defendant's Memorandum of Law in Support of Motion for Summary Judgment 11-12, ECF No. 11. The material is predecisional, State contends, because it was written before Chao's trip was scheduled to take place, and it includes "discussions about 'the possible composition of the DOT delegation, possible meetings and events that the delegation might attend, which delegation members might attend these meetings and events, possible specific agenda topics for meetings with high-level Chinese officials, and the planned trip itinerary within China.'" Id. at 11 (quoting Szabat Decl. ¶ 7). The material is deliberative, State continues, because it "reflects DOT's internal planning process for a meeting abroad between a DOT delegation (to include senior DOT officials) and senior officials of a foreign government, and thus effectively provides a road map of DOT's thinking on policy matters." Id.

After reviewing the contested redactions in camera, the Court agrees with State that the redactions in the Kan-Felsing Exchange are very largely justified by the deliberative process

8

privilege. As State argues, almost all of the redacted communications include predecisional discussions about possible attendees at Secretary Chao's meetings and possible topics of conversation. Furthermore, most of the redacted material is deliberative, as it reflects the planning process of various executive branch actors. And the Court agrees with State that there is a reasonable foreseeability of harm if the redacted material were to be disclosed.

There are two redactions, however, that are not justified by the deliberative process privilege. First, in his initial email, Felsing says: "Mission China looks forward to Secretary Chao's upcoming visit to [redacted] from October 29-November 5 and to assisting in any way possible." Released Emails 2. The redacted information here is simply a list of locations that Secretary Chao planned to visit. It is not predecisional, as it did not "actually help[] officers within an agency make a specific policy decision," Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec., 868 F. Supp. 2d 284, 292 (S.D.N.Y. 2012), and it did not "bear on the formulation or exercise of policy-oriented judgment," Tigue v.

DOJ, 312 F.3d 70, 80 (2d Cir. 2002).[3] Nor is it deliberative, as it "consist[ed] only of compiled factual material," EPA v. Mink, 410 U.S. 73, 87 (1973), rather than "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999). In sum, the redacted material is the product of a decision-making process, not the ingredient of one.

Similarly, the Government should not have redacted the portion of Kan's final response to Felsing in which Kan says: "We've been working with Ethics throughout this planning process. [Redacted.]" Released Emails 1. Although the redacted material may be deliberative, it is not predecisional. Instead, it is a factual response to Felsing's request that Transportation "let [State] know as soon as the ethics office review is complete." Id.

### B. Whether the Remaining Redactions Are Justified by the Deliberative Process and Attorney-Client Privileges

---

[3] It is of no moment that Felsing sent his email before Secretary Chao's trip was scheduled to take place. In this respect, the Government's reliance on timing is misplaced. See Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judmgent [sic] and Reply in Support of Defendant's Motion for Summary Judgment 2, ECF No. 19 ("[T]he 'predecisional' question is primarily a temporal one.").

As noted above, the Kan-Felsing exchange was forwarded to, and discussed with and among, various State attorneys. See Released Emails 1, 17-18, 22-25; Vaughn Index 3-4. These subsequent discussions contain redactions, some of which are extensive. State argues that these redactions are justified by the attorney-client privilege and the deliberative process privilege. Vaughn Index 3-4. State also argues that the redacted material in the first family of emails is protected by the attorney-client and deliberative process privileges. Id. at 1-2.

The legal standard governing the deliberative process privilege is set forth above. In addition to the deliberative process privilege, the Government may assert the attorney-client privilege under Exemption 5. "To invoke the privilege, an agency must demonstrate that the document it seeks to withhold (1) involves confidential communications between an attorney and his client and (2) relates to a legal matter for which the client has sought professional advice." Judicial Watch, Inc. v. U.S. Postal Serv., 297 F. Supp. 2d 252, 267 (D.D.C. 2004). "The agency bears the burden of showing that the information exchanged was confidential." Id.

After reviewing the contested redactions in camera, the Court concludes that each of State's redactions is justified by either the attorney-client privilege or the deliberative process

11

privilege, or, in many cases, both. As State explains in its Vaughn Index and accompanying declarations, the subsequent discussions in the second family "contain confidential communications from State employees to a State attorney for the purpose of obtaining legal advice, confidential communications from a State attorney to a State employee[] providing legal advice, and communications between State attorneys reflecting the development of that legal advice." Vaughn Index 4. The discussions in the first family do as well. Id. at 2. The Court agrees with State's characterization of the redacted communications, and it concludes that these redactions are not more extensive than necessary. Moreover, the Court agrees that State has made a sufficient showing of foreseeable harm if the redacted material were to be disclosed.

## Conclusion

For the foregoing reasons, the Court holds that State's redactions are justified under Exemption 5, subject to the two exceptions discussed above. Accordingly, each party's motion is granted in part and denied in part. Within one week of the date hereof, State must release the two small portions of the communications for which redaction is not justified.

The Clerk is directed to close the entries at docket numbers 10 and 17.

SO ORDERED.

Dated: New York, NY
       July 9, 2019

_____
JED S. RAKOFF, U.S.D.J.